NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARGARET DAVIS, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-3354 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BROWN, Chief Judge**

     This matter comes before the Court upon the appeal of plaintiff Margaret Davis

("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not

entitled to disability benefits under the Social Security Act ("the Act"). This Court, exercising

jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions

without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's

appeal.

## I.  BACKGROUND

     On or about May 11, 1995, Plaintiff filed an application for disability benefits under Title

II and Part A of Title XVIII of the Act, alleging disability as of March 27, 1992. Record ("R.") at

46-48. On or about August 11, 1995, the Social Security Administration denied Plaintiff's claim.

R. at 49-54. A request for reconsideration of this decision was denied on or about October 5,

1995. R. at 56-58. On or about November 11, 1995, Plaintiff filed a Request for Hearing by

Administrative Law Judge.  R. at 59.  On October 10, 1996, Administrative Law Judge ("ALJ") Quintin Morales-Ramirez conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  See R. at 33-45.  On or about January 17, 1997, the ALJ issued a decision denying Plaintiff benefits at step five of the sequential evaluation process.  R. at 13-21.

On or about January 31, 1997, Plaintiff requested review by the Appeals Council.  R. at 6-8.  On or about October 1, 1997, Plaintiff's request for review was denied.  R. at 3-5.  On or about June 20, 2000, Plaintiff's appeal to this Court was denied.  R. at 249-58.  Plaintiff appealed that decision to the Third Circuit, and on or about October 12, 2001, this Court entered a Consent Order remanding the matter to the Commissioner for further administrative action.  See R. at 262-64.  On or about November 16, 2001, the Commissioner remanded the matter to an ALJ for "adequate consideration of the regulatory factors required for a credibility finding" and to "develop, address, and evaluate [Plaintiff's] alleged mental impairment."  R. at 265-66.

On April 3, 2002, ALJ Daniel Shellhamer conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  See R. at 183-237.  At the hearing, Plaintiff's attorney amended the alleged onset of disability to January 1, 1994.  R. at 187.  He further stated that Plaintiff has a tenth grade education and past relevant work as a nurse's aide, which is considered medium work, and factory and assembly work, considered light to medium work.  R. at 189.  During questioning by the ALJ, Plaintiff testified that her weight has gone up approximately twenty pounds in the eight years since the alleged onset of disability.  R. at 191. Plaintiff testified that she does not drive and her husband, with whom she resides, drives her.  R. at 191-92.

Plaintiff testified that she has not had an income since the alleged onset of disability with

the exception of a period of approximately two months working for a clothing store around September 1994. R. at 192. Plaintiff testified that during her time at that job she would miss one or two days a week due to back and hip pain. R. at 193. Plaintiff testified that the pain made it difficult for her to get up every morning for work, so she stopped working. R. at 194. Plaintiff then testified that she went through a training program for handling insurance and patient records in a medical office from November 1995 through June 1996. R. at 194-95. Plaintiff testified that the course ran five days a week for four hours each day and that during the six-month course she missed one or two days a week because of the pain. R. at 195. Plaintiff testified that no job opportunities resulted from the training program. R. at 196.

Plaintiff testified that her prior work experience in assembly involved sitting and standing in assembling small electronic parts for telephones. R. at 197-98. The job also involved a lot of slow walking and sometimes lifting buckets weighing approximately twenty pounds. R. at 197-98. Plaintiff worked in this position for approximately two years. R. at 198. Following the assembly job, Plaintiff testified that she worked as a nurse's aide for a year, which involved direct patient care. R. at 200. Plaintiff testified that this position involved a lot of standing and heavy lifting in terms of patient transfer. Id.

Upon examination by her attorney, Plaintiff testified that she had trouble working at a computer during the training course because the hand and arm movements resulted in back pain. R. at 202. Plaintiff testified that after her alleged onset of disability she tried to go back to an assembly job but had trouble because it required a lot of standing. R. at 204. Plaintiff alleged that she would have similarly had trouble with a job involving a lot of sitting. Id. Plaintiff testified that she is only able to sit comfortably for less than ten minutes. R. at 205-06.

3

Plaintiff testified that prior to 1992 she was in good physical health, but suffered with sleeping problems and anxiety.  R. at 206.  Plaintiff then testified that she injured her back in an auto accident in 1992.  R. at 207.  Plaintiff testified that treatment immediately following the accident resulted in her taking a muscle relaxant and pain pills, plus bed rest for two weeks.  Id.  Plaintiff further testified that the back pain kept her from working through 1994.  R. at 207-08.  As a result of the back pain, Plaintiff testified that her treating physician, Dr. Smith, referred her to a rheumatologist in early 1994.  R. at 208.  Plaintiff testified that the pain at that time was a constant, intense stabbing pain that eased after seeing a chiropractor.  R. at 208-09.  Plaintiff further testified that physical activity, such as standing or housework, increased the pain.  R. at 209.  Plaintiff testified that, similarly, inactivity such as sitting for a long period of time would aggravate the pain.  Id.  Plaintiff testified that, at its worst, the pain was so intense that she had to lay down on a heating pad.  Id.  Plaintiff testified the she could walk about a block before the pain becomes a problem.  R. at 225.  Furthermore, Plaintiff testified that she is therefore unable to walk around the mall or shop.  R. at 225-26.

Plaintiff testified that Dr. Kenneth Wasser treated her for approximately two months in April and May of 1995, during which time he ordered an MRI and made a diagnosis of degenerative disk disease with minimal central disc protrusion.  R. at 211-12.  Following Dr. Wasser's diagnosis, Plaintiff testified that later in 1995 she then saw Dr. Berkowitz, an orthopedic surgeon, for approximately three years.  R. at 212-14.  Plaintiff testified that during the time between visiting those two doctors she was going to the clinic because she did not have medical insurance.  R. at 212-13.  Plaintiff testified that she received medication for her back pain at the clinic.  R. at 213.  Plaintiff also testified to a visit with a physical therapist in June

4

2005.  Id.

Plaintiff testified that the same back pain continued over the years, in addition to muscle spasm at night.  R. at 217.  Plaintiff then testified that she has pain when she bends and when she turns to the left or right.  Id.  Plaintiff also testified to weakness on her right side, from her right hip down to the leg.  Id.  Plaintiff testified that treatment from Dr. Burkowitz and the physical therapy helped alleviate the pain to some degree, but that it did not completely go away.  R. at 217-18.  Plaintiff further testified that the pain and limitations she experienced got worse over the years.  R. at 218.  Plaintiff testified that surgery was suggested, but that there was no guarantee that it would help her.  Id.

Plaintiff testified that she was taking a tranquilizer to help her sleep because of her emotional problems, which included tiredness and sadness.  R. at 219.  Plaintiff then testified that she eventually sought outpatient treatment through the clinic, where she was prescribed additional medication.  Id.  Plaintiff testified that the treatment included four months with a therapist, which helped her.  Id.  Plaintiff testified that the doctor she now sees has prescribed her medication for depression and anxiety.  R. at 220.  Plaintiff testified that she is also on medication for her high blood pressure.  R. at 220.  Plaintiff testified that this medication causes lightheadedness and that those effects require that she not bend down while taking the medication because it makes her dizzy.  R. at 223.  Plaintiff also testified that the anti-inflammatory drugs cause her to have an upset stomach and be drowsy.  R. at 224-25.

Plaintiff's husband also testified at the hearing.  See R. at 229-37.  He testified that he has observed her in pain throughout the relevant time period and that it has caused her to withdraw socially.  R. at 230-31.  He further testified that Plaintiff is unable to do housework such as make

the bed or vacuum.  R. at 231.  He also testified that Plaintiff lies down or sleeps a lot.  Id.  He testified that Plaintiff's physical and emotional symptoms have gotten worse since 1994.  R. at 235.

The ALJ issued a decision on January 27, 2003, in which he held that Plaintiff is not disabled within the meaning of the Act.  See R. at 166-82.  The ALJ's opinion noted the sequential evaluation process and summarized all of the evidence in the record, which included the testimony at the hearing.  R. at 171-80.  The ALJ noted Plaintiff's MRI in April 1994 that revealed findings consistent with disc desiccation or mild degenerative disc disease and mild degenerative spurring and a suggestion of a minimal central disc protrusion.  R. at173.  A progress note by Dr. Wasser in May 1994 indicated that Plaintiff reported that medication had helped with her low back pain, but had caused stomach problems.  Id.  In the report, Dr. Wasser reviewed the MRI and stated that his physical examination revealed tenderness about the lumbosacral spine with paravertebral muscle tenderness.  Id.  Dr. Wasser diagnosed degenerative disc disease with minimal central disc protrusion, patent neural foram, hypertension, muscle spasm, and upset stomach.  Id.

The ALJ also referenced Plaintiff's progress notes at Jersey Shore Medical Center in April 1995 reflecting an assessment of chronic back pain and a recommendation of physical therapy and medication for hypertension.  Id.  Later progress reports indicated that a bone scan had been negative and a later impression was mid-thoracic back discomfort.  Id.  Follow-up in February 1996 included x-rays of the thoracic spine showing no evidence of fracture and assessing possible fibromyalgia resulting from trauma three years prior.  Id.  A physical therapy discharge summary in March 1996 reflected that Plaintiff's complaints of thoracic pain were

decreasing over the course of six additional sessions and that Plaintiff had less spasm and greater

mobility.  R. at 174.

The ALJ referenced Dr. Smith's residual functional capacity questionnaire in August

1996 indicating that Plaintiff had constant thoracic spine pain, right hip pain that radiated to her

right lower leg, and limited back flexion and rotation.  Id.  Dr. Smith's diagnosis was

degenerative disc disease and that her condition had not changed in four years.  Id.  Dr. Smith

concluded that Plaintiff could lift up to ten pounds, could not carry any weight, could stand or sit

for only fifteen minutes at a time, could walk two blocks without stopping, and could not bend or

squat.  Id.  Dr. Smith's ultimate conclusion was that Plaintiff was permanently disabled and

could not work due to her constant pain.  Id.

The ALJ then noted the earlier decision of an ALJ that found her not disabled in that she

retained the functional capacity to perform sedentary exertional level work.  Id.  Plaintiff had

contested this decision, although she acknowledged that "the clinical findings, MRI, CAT scans,

and x-rays did not substantiate" her assertion.  Id.  Additionally, the ALJ referenced an

ambulatory care referral note from November 1996 that indicated clinical findings of tenderness,

but no motor or sensory deficit and recommended non-steroidal anti-inflammatory medication.

Id.  A health maintenance profile dated from October 1996 to March 1997 reflected problems of

chronic back pain, degenerative disc disease, hypertension, and a recent onset of pain in the

middle of the buttocks radiating down both sides to the back of both legs.  Id.

A July 1997 report of Jan Johnson, MA, CSW, reported that Plaintiff was receiving

outpatient treatment for depression and stress and reported that her diagnosis was major

depression, recurrent, without psychotic features.  R. at 175.  Plaintiff's treatment was reported as

consisting of weekly psychotherapy and monthly medication management.  Id.  Plaintiff had responded well to Paxil, but her prognosis was guarded due to the stress caused by her chronic back pain and financial considerations.  Id.

Dr. McCracken's September 1997 examination revealed minimal distress secondary to low back pain, but tenderness about the lower thoracic upper lumbar region.  Id.  X-Rays of the spine from 1993 revealed only mild degenerative changes in the upper lumbar.  Id.  The 1994 MRI of the lumbar spine revealed only mild disc desiccation and mild degenerative disc changes.  Id.  The October 1996 CT scan of the lower thoracic spine was negative.  Id.  Plaintiff reported that her acute pain had resolved itself with medication and rest, but she had a recurrence of a stabbing pain in her mid-back.  Id.  Dr. McCracken's impression was chronic lumbar radicular syndrome with right SI joint derangement, for which he recommended pain management treatment.  Id.  Upon follow-up with Dr. McCracken in January 1998, Plaintiff reported continued right-sided pain and Dr. McCracken recommended chiropractic care and epidural steroid injections.  Id.

In February 1998, Dr. Berkowitz reported that a physical examination of Plaintiff was consistent with right lower extremity radiculopathy and sacroiliac joint dysfunction.  Id.  He recommended epidural steroid injections and chiropractic treatment.  Id.  Upon follow-up in March 1998, Dr. Berkowitz recommended continued chiropractic care and a short course of physical therapy.  Id.  Following physical therapy, Plaintiff indicated to Dr. Berkowitz in April 1998 that she was doing much better, reporting that she was "approximately 50 percent better." See R. at 175-76.  Physical examination revealed fuller, freer range of motion of the lumbar spine.  R. at 176.  Dr. Berkowitz recommended continued physical therapy, but noted that her

8

return to work would be on or about May 4, 1998.  Id.

Dr. Berkowitz then saw Plaintiff in September 1999 when Plaintiff reported recurrent back pain radiating to her buttock with occasional numbness in her foot.  Id.  Physical examination revealed right sacroiliac joint tenderness, but no lower extremity neurological deficits.  Id.  Furthermore, he reported that x-rays of the pelvis and right hip, dated July 1, 1999, were within normal limits.  Id.  Plaintiff reported similar problems at a follow-up visit in December 1999 and a physical examination revealed the same results, whereby Dr. Berkowitz recommended home exercises and prescribed anti-inflammatory medication.  Id.  An examination in January 2000 revealed fuller, freer range of motion of the lumbar spine with a nonantalgic gait.  Id.  A follow-up examination in March 2000 was unchanged.  Id.  Finally, the ALJ noted that an October 2001 exam by Dr. Berkowtiz revealed aggravation of pre-existing lumbar radiculopathy for which he recommended physical therapy and further epidural steroid injections.  Id.  The ALJ then noted that the record contained little further documentation of Plaintiff's pain other than physical therapy evaluation/plan of care forms.  Id.

The ALJ then noted that Plaintiff's mental status examination in November 1997 revealed a flattened affect, possibly as a result of her back injury, but that her mood appeared good and absent of any suicidal or homicidal ideation.  R. at 176-77.  Furthermore, her cognitive examination was reported as intact.  R. at 177.  Plaintiff preferred not to continue in therapy and her prescriptions were renewed.  Id.  In January 2001, Plaintiff's dosage of Celexa was reduced due to restless legs symptoms.  Id.

After setting forth the regulatory framework for evaluating Plaintiff's subjective complaints, the ALJ determined that her allegations concerning her impairments, pain and other

symptoms, and their impact on her ability to work, were not entirely credible in light of the reports of the treating and examining medical sources.  R. at 178.  The ALJ noted that Plaintiff remained seated without difficulty throughout the entire hearing, in contradiction of her allegation of being able to sit for only ten minutes at a time.  Id.  The ALJ then concluded that the record did not establish functional limitations other than no prolonged walking and standing and no heavy lifting.  Id.  Furthermore, the ALJ reasoned that Plaintiff's treatment and pain symptoms as set forth in the record would not rule out sedentary jobs.  Id.  Additionally, the ALJ concluded that the various diagnostic testing undergone by Plaintiff would not preclude her from performing all work activities in sedentary work.  Id.  From that documentation, the ALJ, at step five of the sequential evaluation process, determined that Plaintiff could perform sedentary work in the national economy.  See R. at 179-80.

The ALJ then made the following findings of fact and conclusions of law: 1) Plaintiff met the nondisability requirements for a period of disability and was insured for benefits through March 31, 1997; 2) Plaintiff has not engaged in substantial gainful activity since her amended onset of disability; 3) Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements of the regulations; 4) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in the regulations; 5) Plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision; 6) the ALJ considered all of the medical opinions in the record regarding the severity of Plaintiff's impairments; 7) during Plaintiff's insured status period, Plaintiff retained the functional capacity to perform the full range of sedentary exertional level work in that she could lift and carry up to ten pounds and could stand or walk up to two hours

10

and sit for up to six hours in an eight hour workday; 8) Plaintiff is unable to perform any of her

past relevant work; 9) pursuant to the regulations, Plaintiff was a "younger individual during her

insured period; 10) Plaintiff has a "high school equivalent education;" 11) Plaintiff has a semi-

skilled work background, however her skills are not transferable to other work within her

residual functional capacity; 12) Plaintiff has the residual functional capacity to perform the full

range of sedentary work; 12) based on Plaintiff's exertional capacity for sedentary work, and her

age, education, and work experience, a finding of "not disabled" is directed by Medical-

Vocational Rules 201.28 and .21; and 14) Plaintiff was not under a "disability" as defined in the

Act at any time through the date of his decision.  R. at 180-81.

On or about February 11, 2003, Plaintiff requested that the Appeals Council review the

ALJ's decision.  See R. at 164-65.  The Appeals Council denied the request on May 25, 2004.  R.

at 159-61.  Plaintiff then filed the instant civil action with this Court, seeking review of the

Social Security Administration's denial of disability benefits.

## II.  DISCUSSION

### A.  Standard Of Review For Social Security Appeals

The Commissioner's decisions as to questions of fact are conclusive before a reviewing

court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405(g); Knepp v.

Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere scintilla.

It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v.

Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.

1995)).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound

by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits.  Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(internal citation omitted).  As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review.  Fargnoli, 247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

B. Standard For Awarding Benefits

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520 (2005).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  Id.  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available

in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC

assessment, together with claimant's age, education, and past work experience.  20 C.F.R. §

404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of

performing her past work or some other type of work in the national economy because of her

impairments.

  The application of these standards involves shifting burdens of proof.  The claimant has

the burden of demonstrating both steps one and two, i.e., an absence of present employment and

the existence of a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5

(1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not

receive benefits.  Id.  If the claimant carries these burdens and demonstrates that the impairments

meet or equal those within the Listing, claimant has satisfied her burden of proof and is

automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the

criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step

four that the impairment prevents her from performing her past work."  Id.  Thus, it is the

claimant's duty to offer evidence of the physical and mental demands of past work and explain

why she is unable to perform such work.  If the claimant meets this burden, the burden of proof

then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work

available in the national economy."  Id.  The step five analysis "can be quite fact specific."

Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

  C.  The ALJ's Decision Was Based Upon Substantial Evidence In The Record

  Plaintiff challenges the finding of the ALJ that her impairments did not meet or equal the

severity of those in the Listing.  Pl.'s Br. at 18-20.  Additionally, Plaintiff contests the ALJ's

determination at step five of the sequential evaluation process that she could perform a full range of sedentary work.  Pl.'s Br. at 20-26.[1]

With respect to the determination at step three of the sequential evaluation process that Plaintiff's impairments did not meet or equal a listed impairment, Plaintiff's argument that the ALJ erred in failing to discuss the Listings is patently inaccurate.  A reading of the ALJ's decision clearly shows that the ALJ considered former listing Section 1.05, now new listing Section 1.04 (disorders of the spine), and listing Section 12.04 (affective disorders).  R. at 172.  Furthermore, the evidence in the record, as set forth above, supports the ALJ's determination at that point of the evaluation process and Plaintiff fails to demonstrate anything to the contrary to the Court, in accordance with her respective burden of proof.

At step five of the sequential evaluation process, Plaintiff alleges that the ALJ erroneously applied the Medical-Vocational Guidelines or "Grids" from the Regulations in determining what jobs Plaintiff's RFC permitted her to do.  See 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00 et seq.  Plaintiff's cited cases establish that the ALJ may not exclusively rely on the "Grids" in making his disability determination when the evidence indicates both exertional and nonexertional impairments.  See, e.g., Sykes v. Apfel, 228 F.3d 259, 266-69 (3d Cir. 2000); Jesurum v. Sec'y of U.S. Dep't of Health and Human Servs., 48 F.3d 114, 120 (3d Cir. 1995).  However, in this case, the ALJ noted such a limitation on application of the "Grids" and did not exclusively rely upon them in making his determination.  See R. at 180.

---

[1] Plaintiff's true second point on appeal discusses standards and reasoning in support of her challenge of the ALJ's determination at steps two and five of the sequential evaluation process.  See Pl.'s Br. at 26-30.  Therefore, the Court will address the substance of Plaintiff's arguments in her second point in consideration of the arguments set forth in her first point on appeal.

The ALJ's decision addressed the extensive record in this case, as set forth above.  See R. at 171-80.  During this analysis, the ALJ considered Plaintiff's treatment history with respect to both her back pain and her depression.  As such, the ALJ considered Plaintiff's exertional and nonexertional impairments in concluding that she could perform the demands of a full range of sedentary work.  Although Plaintiff alleges certain limitations that would preclude her from performing that amount of work, the ALJ's decision weighed those allegations against the objective medical evidence from Plaintiff's doctors, in addition to Plaintiff's testimony at the hearing, and concluded otherwise.  See R. at 178-80.

Plaintiff also challenges the ALJ's questioning of her credibility.  Pl.'s Br. at 30.  The Regulations state that objective evidence in addition to a consideration of Plaintiff's daily activities; the location, duration, frequency, and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications; treatment other than medication for symptoms; and functional limitations due to symptoms, all weigh into the evaluation of Plaintiff's pain and determining the extent to which it limits Plaintiff's capacity for work.  See 20 C.F.R.§ 404.1529.  Thus, Plaintiff's subjective complaints of pain are not dispositive of the matter, nor should those complaints be disregarded solely because they are not substantiated by objective medical evidence.  In this case, the ALJ contrasted Plaintiff's testimony with her treatment history, medical reports in the record, and his observation of her demeanor at the hearing, in determining that her allegations were not entirely credible.  R. at 178.

For the reasons set forth above, the Court finds that the ALJ rendered a decision based upon substantial evidence in the record in determining that Plaintiff was not disabled. Furthermore, the ALJ sufficiently addressed the instructions on remand.  Accordingly, Plaintiff's

appeal is denied.

**III.  CONCLUSION**

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: March 29, 2006

                                               __s/ Garrett E. Brown, Jr._____
                                               GARRETT E. BROWN, JR., U.S.D.J.